PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ELI J. COHEN (NYBN 5539226)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7443
    FAX: (415) 436-7234
    Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ELMER RODRIGUEZ RIVERA, <br> a/k/a Sergio Ochoa Rodriguez, <br><br> Defendant. | CASE NO. 24-CR-00507 MMC <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Sentencing Date: April 30, 2025 <br> Time: 2:15 p.m. <br> Court: Hon. Maxine M. Chesney |

## INTRODUCTION

Defendant Elmer Rodriguez Rivera, a/k/a Sergio Ochoa Rodriguez ("Rodriguez Rivera" or "defendant") has a long, violent criminal history and demonstrated disregard for the law. For the reasons explained below, considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Rodriguez Rivera to a term of imprisonment of 42 months, a term of supervised release of three years with the conditions set out in the Presentence Investigation Report ("PSR"), and a special assessment of $100.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.  Criminal History and the Instant Offense**

UNITED STATES' SENTENCING MEMORANDUM   1
24-CR-00507 MMC

Rodriguez Rivera has a lengthy criminal history involving assault, battery, and related crimes that commenced when he was only 13 and continued without abatement into adulthood. *See* PSR ¶¶ 26-32.

As a juvenile, in March 2009, he suffered a sustained petition for Battery on a Person and was sentenced to 45 days in juvenile hall. PSR ¶ 26. In May 2009, he suffered a sustained petition for Assault with a Deadly Weapon; Hit and Run: Property Damage; Driving Under the Influence; and Vehicle Theft. PSR ¶ 27. In December 2010, he suffered a sustained petition for Driving Under the Influence and False Identification and was sentenced to probation. PSR ¶ 28. In January 2013, he suffered a sustained petition for Obstructing a Public Officer and was sentenced to 220 days in juvenile hall. PSR ¶ 29.

In June 2013, Rodriguez Rivera turned 18 years old. In August 2013, less than two months later, he was found guilty of Driving with a Suspended License and sentenced to 28 days jail and 12 months probation, with the imposition of sentence suspended. PSR ¶ 30.

Then, in 2014, Rodriguez Rivera was convicted of one count of Cal. Pen. Code ("PC") § 273.5(a) Inflict Corporal Injury on Spouse/Cohabitant, one count of PC § 422(a) Criminal Threats to Cause Great Bodily Injury or Death, and one count of PC § 245(a)(1) Force/Assault with a Deadly Weapon – Not Firearm, and sentenced to a total of ten years imprisonment. PSR ¶ 31. These convictions stemmed from domestic violence crimes he committed in November 2013, described below in greater detail because of their particularly heinous nature. *Id.*

On November 27, 2013, Rodriguez Rivera went out drinking with friends, and while he was out, his then four-months-pregnant girlfriend ("Victim") went to the store for his mother. PSR ¶ 31. Rodriguez Rivera called the Victim and asked why she had gone out without asking him first. *Id.* He ordered her to return home, but she was afraid to because she believed Rodriguez Rivera would hurt her. *Id.* Instead, she went to a friend's house to spend the night. *Id.* Rodriguez Rivera called and texted her numerous times. *Id.*

The Victim returned to Rodriguez Rivera's residence on November 29, and immediately upon her entry, Rodriguez Rivera began assaulting her. PSR ¶ 31. He forced her to strip naked and shower because she was bleeding. *Id.* The shower curtain was left open, and Rodriguez Rivera stood in the

doorway watching. *Id.* When the Victim began to cry and scream, Rodriguez Rivera told her to be quiet, and that he was going to get a knife because she was being too loud. *Id.* Rodriguez Rivera retrieved a knife, held it to her neck, and applied pressure. *Id.* He told the Victim he was going to kill her, brought the knife back as if preparing to stab her, then dropped the knife and instead punched her in face again. *Id.* Rodriguez Rivera then picked up the knife and began cutting his own wrist, saying: "See what I do for you?" *Id.*

Rodriguez Rivera's mother and uncle arrived at the residence, and his mother tried to distract him. PSR ¶ 31. Rodriguez Rivera reentered the bathroom and shut the door. *Id.* He hugged the Victim, professing his love for her. *Id.* Rodriguez Rivera passed out in the bathtub and the Victim got out of the shower to tell Rodriguez Rivera's mother what had happened. *Id.* Rodriguez Rivera eventually woke up and left the residence with his uncle to buy beer. *Id.* When he returned, he began to argue with the Victim about her leaving the house two days prior, accused her of infidelity, and told her: "You better call all your family today because you are dying tonight." *Id.* Rodriguez Rivera's mother and uncle intervened, but he told them he did not care. *Id.* He started an altercation with his uncle, at which point the Victim and Rodriguez Rivera's mother fled outside and his mother called the police. *Id.* The Victim fled the scene and went to a friend's house, the friend called the police. *Id.*

The Victim was later taken to the hospital by ambulance, where she was treated for a badly broken nose, multiple bruises, raised red areas on her neck and face – including swelling to her face so severe that her eyes were swollen shut – and heavy swelling to her knee. PSR ¶ 31. Police arrested Rodriguez Rivera the following day. *Id.* During questioning, he stated that there had been an argument, and he began to throw things, but that it had not become physical. *Id.* He claimed the wounds on his arms were from making fences, before admitting that he had inflicted some of them on himself. *Id.* When police confronted Rodriguez Rivera with the fact that the Victim had been severely beaten and accused him of being the perpetrator, he invoked his right to counsel. *Id.* The court issued an Emergency Protection Order for the Victim. *Id.* A search of Rodriguez Rivera's vehicle revealed bloody blankets and a laundry bag containing a bloody towel. *Id.*

A review of Rodriguez Rivera's cell phone records showed that on November 30 he texted someone to ask if that person could drive him to the airport. PSR ¶ 31. Jail calls reflected that while

Rodriguez Rivera was in custody, he violated the Emergency Protection Order by questioning the Victim about where she was going and with whom she was spending time, berating her for not visiting him in jail, and telling her to delete friends on social media. *Id.*

For his PC § 273.5(a), PC § 422(a), and PC § 245(a)(1) convictions, Rodriguez Rivera received concurrent prison sentences of 10 years (inclusive of enhancements), two years, and three years, respectively. *Id.*

He married his current wife while serving his 10-year sentence. PSR ¶ 49. Immigration and Customs Enforcement ("ICE") removed him to Mexico – his first time being removed from the United States – immediately following his release from state prison, on or about April 11, 2022. PSR ¶ 7. He illegally reentered the United States approximately three months later. PSR ¶ 50.

## II.   Criminal Conduct Subsequent to Illegal Reentry

Approximately seven months after Rodriguez Rivera illegally reentered the United States, on February 21, 2023, two men were returning home in unincorporated San Mateo County and had an argument with an unknown person, later identified as Rodriguez Rivera, in another vehicle. PSR ¶ 32. Rodriguez Rivera got out of his car and challenged one of the men to a fight. *Id.* He then told the men he would return to kill them both and left the scene. *Id.* Shortly thereafter, Rodriguez Rivera returned in his car, and attempted to run over one of the men, causing a collision with a parked car. *Id.* He then fled the scene. *Id.*

On March 8, 2023, officers spotted and recognized Rodriguez Rivera's vehicle as being involved in the February 21 incident and conducted a stop. PSR ¶ 37. Rodriguez Rivera initially pulled over, but did not comply with commands to put his hands up, and exited his vehicle. *Id.* He ignored commands to stay in his vehicle and instead reached toward his waistband. *Id.* He fled on foot and disregarded commands to stop. *Id.* Officers gave chase and he eventually stopped, but resisted arrest by disobeying orders to give officers his hands. *Id.* Rodriguez Rivera was ultimately convicted of two counts of Criminal Threats to Cause Great Bodily Injury or Death under PC § 422(a) and sentenced to two years prison. PSR ¶ 32.

## III.   Procedural Background

On September 4, 2024, Rodriguez Rivera was charged by Criminal Complaint with one count of

Illegal Reentry Following Removal by an Aggravated Felon under 8 U.S.C. §§ 1326(a) & (b)(2). He was arrested on September 12, 2024, and made an initial appearance on September 13, 2024. On September 17, 2024, the grand jury returned a single-count Indictment charging him with the same crime. On September 18, 2024, a magistrate judge ordered Rodriguez Rivera released under conditions. The United States appealed that order; this Court reversed it and ordered Rodriguez Rivera detained.

On February 12, 2025, Rodriguez Rivera pleaded guilty pursuant to a Plea Agreement under Federal Rule of Criminal Procedure 11(c)(1)(B). In the Plea Agreement, the parties agreed on a base offense level of eight under United States Sentencing Guidelines (U.S.S.G.) § 2L1.2(a), a 10-level increase for committing the instant offense after sustaining a felony conviction (other than an illegal reentry offense) resulting in a prison sentence of five years or more under U.S.S.G. § 2L1.2(b)(2)(A), an eight-level increase for sustaining a felony conviction (other than an illegal reentry offense) resulting in a prison sentence of two years or more subsequent to commission of the instant offense under U.S.S.G. § 2L1.2(b)(3)(B), and a three level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1, which yields a Total Offense Level of 23. The parties have not reached an agreement regarding Rodriguez Rivera's Criminal History Category.

The United States agreed to recommend a sentence no higher than 42 months imprisonment, provided Rodriguez Rivera did not violate the Plea Agreement or fail to accept responsibility.

Judgment and Sentencing is scheduled for April 30, 2025.

**OFFENSE LEVEL AND CRIMINAL HISTORY CALCULATIONS**

**I.    The PSR's Total Offense Level Calculation is Correct**

The United States agrees with Probation's offense level calculations in the PSR, as set forth below:

    a.  Base Offense Level, U.S.S.G. § 2L1.2(a)                                                                8

    b.  Specific Offense Characteristics Under U.S.S.G. Ch. 2

        U.S.S.G. § 2L1.2(b)(2)(A) – Sentence of five or more years prior to removal     + 10

        U.S.S.G. § 2L1.2(b)(3)(B) – Sentence of two or more years after removal        + 8

    c.  Adjusted Offense Level                                                                                      26

    c.  U.S.S.G. § 3E1.1 – Acceptance of Responsibility                                              -3

|   |   |   |
|---|---|---|
| d. | Total Offense Level | 23 |

Probation's recommendation that the 10-level sentencing enhancement under § 2L1.2(b)(2)(A) and eight-level enhancement under § 2L1.2(b)(3)(B) apply to this case is correct. The Guidelines sections state that they shall apply "[i]f, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more," and "[i]f, after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more," respectively.

The Ninth Circuit has held that district courts should apply a preponderance of the evidence standard when evaluating the application of sentencing enhancements. *United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (en banc). "[T]he preponderance of the evidence standard is sufficient to satisfy due process for fact-finding under the advisory Guidelines, even when a fact has an extremely disproportionate effect on the sentence." *Id.* That standard is clearly satisfied here, where documentary records, as well as the Plea Agreement, establish the existence of these prior and subsequent convictions and sentences.

## II.     The PSR's Criminal History Calculation is Correct

The United States agrees that Rodriguez Rivera's criminal history category is IV. PSR ¶ 35.

## III.    The PSR's Sentencing Guidelines Range is Correct

The United States agrees that a Total Offense Level of 23 at Criminal History Category IV yields a Guidelines range of 70 to 87 months imprisonment. PSR ¶ 65.

## SENTENCING RECOMMENDATION

## I.      Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient,

but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

  (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II. Probation's Recommendation

Probation has recommended that Rodriguez Rivera be sentenced to a term of 40 months imprisonment, three years supervised release with the conditions set out in the PSR, and a special assessment of $100. PSR at 21.

## III. The United States' Recommendation

The United States respectfully recommends that the Court impose a sentence of 42 months imprisonment, three years supervised release with the conditions set out in the PSR, and a special assessment of $100, as it would appropriately balance the § 3553(a) factors. As described below, such a sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing set out in 18 U.S.C. § 3553(a).

First, Rodriguez Rivera's history and characteristics support the government's recommended sentence. His criminal history militates in favor of a substantial prison sentence.[1] Rodriguez Rivera is a 29-year-old citizen and national of Mexico with no legal status in the United States. While the United States appreciates that he was born in Mexico while his mother had temporarily relocated back there, was then brought to this country as a small child, and has lived the vast majority of his life in California, he has repeatedly squandered the opportunities afforded him by residing here. He committed a string of crimes, often violent, from ages 13 to 18, and was an admitted gang affiliate, though he now claims to

---

[1] The government's recommended 42-month sentence would still be a substantial downward variance from the Guidelines range of 70-87 months.

UNITED STATES' SENTENCING MEMORANDUM   7
24-CR-00507 MMC

be a "dropout." PSR ¶ 51. His 2014 state domestic violence convictions, described above in Section II, are the most notable. It is worth reiterating the remarks of Judge Karesh, who was much closer to the facts and stated the following when sentencing Rodriguez Rivera for those crimes:

> I will be quite honest. This is one of the worst cases I have ever seen. The level of violence and brutality is terrible. The defendant's record is terrible. He violated a court order by contacting the victim. The injuries were—the picture, which is attached to the District Attorney's brief, is just worth a thousand words. It is just terrible. . . . I have never at this point gone above an indicated sentence in my career as a Criminal Presiding Judge, but in view of all the factors in this case, I am going to do that. I am going to follow what the People say for the reasons that I just indicated.

People's Opposition to Mot. to Strike Prior Pursuant to Romero, and Sentencing Recommendation at 6, *People v. Elmer Ochoa Rodriguez*, No. 23-SF-003999-A (San Mateo County Superior Court 2024).

Simply put, Rodriguez Rivera has repeatedly and egregiously abused the privilege of being allowed to live almost his entire life in this country without legal status. When the immigration consequences of his atrocious crime – removal from the country – were imposed upon him, he promptly disregarded the law and came back into the country without permission.

Just months after illegally reentering the country, Rodriguez Rivera's violent tendencies manifested again when he escalated a verbal argument into death threats toward two strangers and then attempted to hit one of them with his car. He fled when police attempted to apprehend him for those crimes.

The difficulties of Rodriguez Rivera's upbringing, his struggles with alcohol, and the adverse events he claims to have endured are lamentable and thus justify a variance below the Guidelines range. But they justify only the downward variance suggested by the United States, and no more.

The government's recommended sentence also reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Rodriguez Rivera's prior removal, premised upon his extremely violent conduct, sent an unequivocal message that he may not stay in the United States nor reenter without explicit permission. And yet, he showed no regard for this determination or the dictates of immigration law. Not only that, he proved his dangerousness just months later. The government's recommended sentence promotes respect for the law in that it communicates that the country's immigration law cannot be freely disregarded. The government's recommended sentence also provides

just punishment; the Court should consider Rodriguez Rivera's conduct in this case in its full context. He did not just enter the United States illegally. He re-entered three months after removal for an egregious aggravated felony conviction, and committed further violent crime in short order.

The government's recommended sentence serves not only as specific deterrence to Rodriguez Rivera, but it would also serve as general deterrence to others. Rodriguez Rivera is subject to near-certain removal at the conclusion of his sentence in this case, which may tempt the Court to impose a sentence that expedites that outcome. The Court should note, however, the message that would send: that a person, removed on the basis of an extremely violent crime, can illegally reenter three months later, commit another violent crime a few months after that, and simply be removed again at the conclusion of the illegal reentry case. Rodriguez Rivera's prior removal failed to deter his reentry and continued criminal activity in this country.

The government's recommended sentence vindicates the Court's need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. As Probation notes, according to the Judiciary Sentencing INformation platform ("JSIN"), similarly situated defendants in fiscal years 2019-2023 received an average sentence of 45 months and median sentence of 46 months. PSR ¶ 80. The government's recommended sentence is in line with, and in fact below, these figures.

Finally, the government agrees with Probation's recommendation that the Court impose a three-year term of supervised release, along with the conditions proposed in the PSR.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Rodriguez Rivera to a term of 42 months imprisonment, three years supervised release with the conditions set out in the PSR, and a special assessment of $100.

DATED: April 23, 2025                    Respectfully submitted,

                                         PATRICK D. ROBBINS
                                         Acting United States Attorney

                                          /s/ Eli J. Cohen
                                         ELI J. COHEN
                                         Special Assistant United States Attorney